UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-20559-CIV-ALTONAGA/Reid

**PEDJA SAVELJIC**,

 Plaintiff,
v.

**PETER BAYTARIAN**,

 Defendant.
_____/

## ORDER

**THIS CAUSE** came before the Court on Defendant, Peter Baytarian's Motion to Dismiss Plaintiff's Amended Complaint [ECF No. 14], filed on April 11, 2025. Plaintiff, Pedja Saveljic filed a Response [ECF No. 17], to which Defendant filed a Reply [ECF No. 18]. The Court has carefully considered the parties' written submissions, the record, and applicable law. For the following reasons, the Motion is granted.

### I. BACKGROUND

This action arises from a failed joint venture to develop two adjacent properties into a restaurant and lounge in Miami Beach, Florida. (*See* Am. Compl. [ECF No. 6] ¶ 7). When forming the venture in 2019, the parties agreed to combine Defendant's financial resources with Plaintiff's expertise in construction, project management, and business operations. (*See id.* ¶¶ 7–8). They intended to share equally in the resulting profits and losses. (*See id.* ¶ 9).

To finance and manage the renovation of the properties, Defendant formed XYSEE, LLC, a Delaware limited liability company. (*See id.* ¶ 11). Plaintiff later formed XYSEE LLC, a Florida limited liability company operating under the name Serendipity No3, to obtain permits and licenses and oversee the project's operation. (*See id.* ¶ 13). Defendant and Plaintiff served as President

and Vice President, respectively, of both entities. (*See id.* ¶¶ 12, 14). Plaintiff relocated from New York to Miami to oversee the project and contributed approximately $1.2 million in personal funds; with $400,000 allocated directly toward project costs such as subcontractor payments, permits, and materials. (*See id.* ¶ 18).

Once the project was underway, Defendant allegedly began diverting unrelated funds from another real estate project — the "Lake Park Property" — into the joint venture's accounts. (*Id.* ¶ 20; *see also id.* ¶ 21). Plaintiff claims Defendant then withdrew those funds, falsely characterized them as dividends or returns on equity investments, and concealed the resulting discrepancies by manipulating transactions and misrepresenting the joint venture's financial health. (*See id.* ¶¶ 22–23, 29). Defendant eventually removed Plaintiff from management by amending corporate filings without his knowledge, forcing Plaintiff to take corrective action. (*See id.* ¶¶ 29–30). As a result, Plaintiff was unable to protect his interests or complete the renovations, causing substantial financial harm. (*See id.* ¶¶ 31, 34). Defendant claimed over $3.7 million in distributions from the Florida LLC between 2022 and 2023 and reported over $3 million in tax losses from the joint venture — while Plaintiff received no distributions. (*See id.* ¶¶ 24–26).

Based on these allegations, Plaintiff asserts four claims: one for violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. sections 1961–1968 ("Count I") (*see id.* ¶¶ 39–89); one for violation of Florida's RICO statute, Section 895.01 *et seq.*, Florida Statutes ("Count II") (*see id.* ¶¶ 90–140); one for conversion under Florida law ("Count III") (*see id.* ¶¶ 141–46); and one for unjust enrichment under Florida law ("Count IV") (*see id.* ¶¶ 147–51).

Defendant asks the Court to dismiss the Amended Complaint for failure to state any claims for relief. (*See generally* Mot.; Reply).

## II.  LEGAL STANDARDS

***Rule 12(b)(6).***  "To survive a motion to dismiss [under Federal Rule of Civil Procedure 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (alteration added; quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Although this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. (alteration added; quoting *Twombly*, 550 U.S. at 555).  Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Twombly*, 550 U.S. at 555 (alteration added; citation omitted).  "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (alteration added; citing *Twombly*, 550 U.S. at 556).

To meet this "plausibility standard," a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678 (alteration added; citing *Twombly*, 550 U.S. at 556).  "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009) (citing *Iqbal*, 556 U.S. at 678), *abrogated on other grounds by Mohamad v. Palestinian Auth.*, 566 U.S. 449 (2012).  When considering a motion to dismiss, a court must construe the complaint "in a light most favorable to the plaintiff" and take its factual allegations as true. *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (citation omitted).

***Rule 9(b).***  "Claims that sound in fraud must comply not only with the plausibility standard articulated in *Twombly* and *Iqbal*, but also the heightened pleading requirements of Rule 9(b)."

*Young v. Grand Canyon Univ., Inc.*, 57 F.4th 861, 875 (11th Cir. 2023) (citation omitted). As the Eleventh Circuit recently explained,

> Rule 9(b) is satisfied if the complaint sets forth (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

*Id.* at 875–76 (quoting *Tello v. Dean Witter Reynolds, Inc.*, 494 F.3d 956, 972 (11th Cir. 2007)).

### III.  DISCUSSION

As a threshold matter, Plaintiff asserts that the Court has federal question jurisdiction under 28 U.S.C. section 1331 — and only federal question jurisdiction — based on his federal RICO claim. (*See* Am. Compl. ¶ 1); *see also Palmer v. Hosp. Auth.*, 22 F.3d 1559, 1564 (11th Cir. 1994) (holding that complete diversity requires that no plaintiff be a citizen of the same state as any defendant (citation omitted)); (Am. Compl. ¶¶ 4–5 (alleging both parties are citizens of Florida)). In this posture, "once the district court determines that subject matter jurisdiction over a plaintiff's federal claims does not exist, [it] must dismiss a plaintiff's state law claims." *Scarfo v. Ginsberg*, 175 F.3d 957, 962 (11th Cir. 1999) (alteration added; citations omitted). Because Plaintiff fails to state a federal RICO claim, the case must be dismissed.

Plaintiff purports to bring his federal RICO claim under 18 U.S.C. section 1962(c) (*see* Am. Compl. ¶ 68), which requires a showing that Defendant (1) operated or managed (2) an enterprise (3) through a pattern (4) of racketeering activity, involving at least two predicate acts. *See* 18 U.S.C. § 1962(c); *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1348 (11th Cir. 2016) (citations omitted). RICO claims under this provision "are essentially a certain breed of fraud claims" and are thus subject to Rule 9(b)'s heightened pleading standards. *Ambrosia Coal & Const. Co. v. Pages Morales*, 482 F.3d 1309, 1316 (11th Cir. 2007).

Defendant argues the Amended Complaint falls short on the third and fourth elements, as Plaintiff does not allege a pattern of racketeering activity, and the predicate acts are not alleged with the particularity Rule 9(b) requires. (*See* Mot. 8–16; Reply 2–6).[1] The Court agrees.

**A. Pattern of Racketeering Activity**

"An essential element of any RICO claim is a pattern of racketeering activity." *Viridis Corp. v. TCA Glob. Credit Master Fund, LP*, 155 F. Supp. 3d 1344, 1363 (S.D. Fla. 2015) (citation and quotation marks omitted). "To successfully allege a pattern of racketeering activity, [a] plaintiff[] must charge that: (1) the defendant[] committed two or more predicate acts within a ten-year time span; (2) the predicate acts were related to one another; and (3) the predicate acts demonstrated criminal conduct of a *continuing* nature." *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1264 (11th Cir. 2004) (alterations added; citations omitted; emphasis in original).

As to the third prong of racketeering activity, a plaintiff must allege that the predicate acts "themselves amount to, or . . . otherwise constitute a threat of, *continuing* racketeering activity." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 240 (1989) (alteration added; emphasis in original). "'Continuity' is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *Id.* at 241 (citation omitted). Plaintiff pleads both forms, asserting closed-ended continuity based on alleged predicate acts spanning a five-year period from 2019 through 2024 (*see* Am. Compl. ¶ 81); and open-ended continuity by claiming, on information and belief, that Defendant's conduct reflects his regular way of doing business (*see id.* ¶ 82). Neither theory is adequately supported.

---

[1] As to the first and second elements, Plaintiff alleges the RICO "enterprise" consisted of an association-in-fact among Defendant, the joint venture, and the two XYSEE LLC entities, which Plaintiff claims Defendant used to facilitate the purported misconduct. (*See* Am. Compl. ¶¶ 43, 53, 62). Defendant does not argue that those allegations are insufficient. (*See generally* Mot.; Reply).

5

To establish closed-ended continuity, a RICO plaintiff must allege a "series of related predicates extending over a substantial period of time." *H.J. Inc.*, 492 U.S. at 242. Courts in this Circuit consider not only the duration of the alleged conduct, but also factors such as the number and variety of predicate acts, the number of victims, and the complexity and size of the scheme. *See Magnifico v. Villanueva*, 783 F. Supp. 2d 1217, 1229 (S.D. Fla. 2011) (citation omitted).

Plaintiff alleges that Defendant's conduct spanned five years, from 2019 through 2024 — a substantial period. (*See* Am. Compl. ¶ 81); *Design Pallets, Inc. v. GrayRobinson, P.A.*, 515 F. Supp. 2d 1246, 1256 (M.D. Fla. 2007) (finding three and a half years substantial). But as Defendant correctly notes, the Amended Complaint describes a single scheme — the misappropriation of joint venture funds, with a discrete objective — a single alleged victim, and no factual allegations of multiple independent acts of racketeering. (*See* Mot. 9–10; Reply 3–4; *see also* Am. Compl. ¶¶ 39–89). Courts routinely reject allegations of single schemes as insufficient to support closed-ended continuity. *See, e.g.*, *Jackson*, 372 F.3d at 1267 (refusing to find closed-ended continuity where the RICO allegations concerned only a single scheme with a discrete goal, even when the scheme extended over several years (collecting cases)); *Trump v. Clinton*, 626 F. Supp. 3d 1264, 1305 (S.D. Fla. 2022) (same). So, too, here.

Plaintiff's attempt to establish open-ended continuity fares no better. Such continuity may be established by showing that "the racketeering acts themselves include a specific threat of repetition extending indefinitely into the future," or "that the predicate acts or offenses are part of an ongoing entity's regular way of doing business." *H.J. Inc.*, 492 U.S. at 242. Plaintiff leans in that direction by asserting, on information and belief, that Defendant's conduct is merely one instance in a long-running pattern of financial improprieties undertaken as a regular business practice. (*See* Am. Compl. ¶ 82). As Defendant notes, however, that allegation stands alone and

is unsupported by any facts. (*See* Mot. 11; Reply 4–5). The Amended Complaint does not provide a single factual detail suggesting that Defendant engaged in financial improprieties beyond those tied to the failed restaurant-and-lounge project — which, in Plaintiff's own telling, ended in 2024. (*See* Am. Compl. ¶¶ 27, 30; *see also generally id.*).

Simply put, Plaintiff offers no factual allegations establishing a distinct threat of ongoing or future racketeering activity by Defendant, nor does he allege Defendant's conduct formed part of any ongoing business practice involving the XYSEE LLC entities. These generalized, conclusory assertions are insufficient to support open-ended continuity. *See, e.g.*, *Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 F. App'x 136, 138 (11th Cir. 2011) (citation omitted); *Viridis Corp.*, 155 F. Supp. 3d at 1364; *Fla. Beauty Flora Inc. v. Pro Intermodal L.L.C.*, No. 20-20966-Civ, 2020 WL 4003494, at *12 (S.D. Fla. July 15, 2020) (citations omitted).

### B. Predicate Acts

Even assuming Plaintiff adequately alleges continuity, the federal RICO claim would still collapse for failure to identify two predicate acts with the particularity that Rule 9(b) demands. A RICO plaintiff must allege "two or more" qualifying racketeering acts that are indictable on their own. *Jackson*, 372 F.3d at 1264; *see also Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1087 (11th Cir. 2004). Because a civil RICO claim must satisfy Rule 9(b), a plaintiff must plead predicate acts with particularity. *See Ambrosia Coal & Const. Co.*, 482 F.3d at 1316 (citations omitted). Plaintiff fails to do so. While he identifies three categories of predicate acts — mail fraud, wire fraud, and money laundering[2] (*see* Am. Compl. ¶¶ 70, 75–76) — he does not provide detailed

---

[2] At least one court in this District has held that the predicate act of money laundering, unlike mail or wire fraud, need not be pleaded with particularity because it lacks an element of fraud. *See Wolff v. Leadenhall Bank & Tr.*, No. 03-22778-Civ, 2005 WL 8165194, at *7 (S.D. Fla. Apr. 1, 2005). *But see Ageloff v. Kiley*, 318 F. Supp. 2d 1157, 1159 (S.D. Fla. 2004) (citation omitted); *Rubinstein v. Keshet Inter Vivos Tr.*, No. 17-61019-Civ, 2018 WL 8899231, at *4 (S.D. Fla. Oct. 29, 2018) (citation omitted), *report and recommendation adopted*, No. 17-61019-Civ, 2018 WL 8899306 (S.D. Fla. Nov. 15, 2018). Yet, Plaintiff

allegations identifying the who, what, when, where, and how of the alleged predicate acts, as Rule 9(b) requires. *See Ceithaml v. Celebrity Cruises, Inc.*, 207 F. Supp. 3d 1345, 1353 (S.D. Fla. 2016) (citing *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1262 (11th Cir. 2006)).

"Mail or wire fraud," the Eleventh Circuit explains, "occurs when a person (1) intentionally participates in a scheme to defraud another of money or property and (2) uses the mails or wires in furtherance of that scheme." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (citation and quotation marks omitted). But alleging a scheme is not enough — under Rule 9(b), Plaintiff must plead the fraud with particularity. That means setting out: "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled [the plaintiff]; and (4) what the defendants gained by the alleged fraud." *Id.* at 1291 (alteration added; quotation marks and citation omitted).

Plaintiff's allegations fall well short of pleading these elements with particularity. (*See generally* Am. Compl.); *see also Young*, 57 F.4th at 875–76. He identifies no specific misrepresentation — much less the time, place, speaker, or content of such statement. For instance, while Plaintiff references "[c]orrespondences and/or digital communications that misrepresented the joint venture's financial health" (Am. Compl. ¶ 69(c) (alteration added)), he never describes the contents of those communications, who sent them, or how they misled him. Similarly, Plaintiff alleges that Defendant labeled transferred funds "dividends" (*id.* ¶ 69(b)), but pleads no facts showing the label was false, that it was communicated to him, or that it was used to deceive. Nor

---

does not make that argument, and even under Rule 8's more lenient standard, Plaintiff would still fail to allege any predicate act. The Amended Complaint does not identify any specific transaction, timeline, or facts suggesting Defendant knowingly conducted a financial transaction with unlawful proceeds or intended to promote or conceal unlawful activity. (*See, e.g.*, Am. Compl. ¶¶ 33, 76); *Republic of Pan. v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 949 (11th Cir. 1997) (explaining that a plaintiff must allege facts sufficient to support each statutory element of a pleaded predicate act (citation omitted)).

does Plaintiff connect any communication to a specific act of fraud, let alone explain what gain Defendant supposedly secured or how the alleged conduct amounts to a fraudulent scheme. Without such details, the mail and wire fraud allegations do not satisfy Rule 9(b) and cannot serve as predicate acts for a civil RICO claim.

The same goes for Plaintiff's attempt to plead money laundering. To qualify as a predicate act under RICO, money laundering demands more than conclusory labels — rather, it requires "allegations that a person conducted a financial transaction with money he knew to be the proceeds of unlawful activity, with the intent to promote the carrying on of specified unlawful activity, knowing that the transaction is designed to conceal or disguise the source or nature of the activity." *Wolff*, 2005 WL 8165194, at *8 (citing 18 U.S.C. § 1956(a)(1); other citation omitted); *see also United States v. Flynt*, 15 F.3d 1002, 1007 (11th Cir. 1994) (citation omitted).

Plaintiff offers no specific allegations supporting those elements. (*See generally* Am. Compl.). He merely identifies several routine business activities — such as fund transfers between affiliated entities, and the classification of distributions as dividends — without alleging that those activities involved proceeds derived from a specified unlawful activity, or describing any attempt to designed to disguise the origin or nature of the funds involved. (*See id.* ¶¶ 69(b), 70–76). Such routine financial activities fall well short of the deceptive transactions or concealment efforts that constitute money laundering. *See United States v. Silvestri*, 409 F.3d 1311, 1332–35 (11th Cir. 2005) (upholding conviction where defendant deposited fraudulently obtained checks into multiple accounts to promote or disguise ongoing unlawful conduct). At most, these allegations reflect a dispute over the use of joint-venture assets — not the knowing laundering of criminal proceeds.

## IV.  CONCLUSION

Because Plaintiff fails to allege a pattern of racketeering activity, his federal RICO claim cannot stand.  *See* 18 U.S.C. § 1962(c).  Without a viable federal claim, the entire action must be dismissed for lack of subject matter jurisdiction.  *See Scarfo*, 175 F.3d at 962.

Accordingly, it is

**ORDERED AND ADJUDGED** Defendant, Peter Baytarian's Motion to Dismiss Plaintiff's Amended Complaint **[ECF No. 14]** is **GRANTED**.  The Amended Complaint is dismissed without prejudice.  The Clerk is instructed to **CLOSE** the case.

**DONE AND ORDERED** in Miami, Florida, this 22nd day of May, 2025.

_____
**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc:   counsel of record